**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| PINEY WOODS MOBILITY LLC, <br><br> Plaintiff, <br><br> v. <br><br> AT&T INC., AT&T ENTERPRISES, LLC, AT&T MOBILITY LLC, AT&T MOBILITY II LLC, and AT&T SERVICES, INC., <br>                    Defendants. | CASE NO. 2:26-cv-0121 |

## ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Piney Woods Mobility LLC ("Piney" or "Plaintiff"), for its Complaint against Defendants AT&T Inc., AT&T Enterprises, LLC, AT&T Mobility LLC, AT&T Mobility II LLC, and AT&T Services, Inc. (collectively, "Defendants" or "AT&T"), alleges the following:

## THE PARTIES

1.    Plaintiff is a limited liability company organized and existing under the laws of the state of Texas, with a principal address at 1400 W Southwest Loop 323, Suite 50 #2090, Tyler, TX 75701.

2.    Upon information and belief, Defendant AT&T Inc. is a Delaware corporation with a principal place of business at 208 S. Akard St., Dallas, Texas 75202. Defendant AT&T Inc.'s registered agent for service is CT Corporation System, 1999 Bryan Street, Suite 900 Dallas, Texas 75201.

3.    Upon information and belief, Defendant AT&T Enterprises, LLC is a Delaware limited liability corporation with a principal place of business at 208 S. Akard St., Dallas, Texas 75202. Defendant AT&T Enterprises, LLC's registered agent for service is CT Corporation System, 1999 Bryan Street, Suite 900 Dallas, Texas 75201.

4.     Upon information and belief, Defendant AT&T Mobility LLC is a Delaware limited liability corporation with a principal place of business at 1025 Lenox Park Blvd NE, Atlanta, Georgia 30319. Defendant AT&T Mobility LLC's registered agent for service is CT Corporation System, 1999 Bryan Street, Suite 900 Dallas, Texas 75201.

5.     Upon information and belief, Defendant AT&T Mobility II LLC is a Delaware limited liability corporation with a principal place of business at 1025 Lenox Park Blvd NE, Atlanta, Georgia 30319. Defendant AT&T Mobility II LLC's registered agent for service is CT Corporation System, 1999 Bryan Street, Suite 900 Dallas, Texas 75201.

6.     Upon information and belief, Defendant AT&T Services, Inc. is a Delaware corporation with a principal place of business at 208 S. Akard St., Dallas, Texas 75202. Defendant AT&T Services, Inc.'s registered agent for service is CT Corporation System, 1999 Bryan Street, Suite 900 Dallas, Texas 75201.

7.     Defendants operate under and identify with the trade name "AT&T."  On information and belief, each of the Defendants directly or indirectly imports, develops, designs, manufactures, uses, distributes, markets, offers to sell, and/or sells products and services in the United Sates, including in this district, and otherwise purposefully directs activities to the same.  On information and belief, the Defendants have been and are acting in concert and are otherwise liable jointly, severally, or in the alternative for a right to relief with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences related to the making, using, importing into the United States, offering for sale or selling of at least one infringing product. Defendants use, import into the United States, sell, and/or offer for sale in the United States the Accused Products, including at their retail stores in this district, such as (1) 701 N Central Expressway, Suite 400, Plano, Texas 75075 and (2) 2401 Preston Road, Suite B, Plano, Texas 75093.

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                                    2

## JURISDICTION AND VENUE

8.    This is an action for patent infringement arising under the Patent Laws of the United States, Title 35 of the United States Code.

9.    Subject matter jurisdiction is based on 28 U.S.C. § 1338, in that this action arises under Federal statute, the patent laws of the United States (35 U.S.C. §§ 1, *et seq.*).

10.    Each Defendant is subject to this Court's personal jurisdiction consistent with the principles of due process and/or the Texas Long Arm Statute.

11.    Personal jurisdiction exists generally over the Defendants because each Defendant has sufficient minimum contacts and/or has engaged in continuous and systematic activities in the forum as a result of business conducted within the State of Texas and the Eastern District of Texas.  Personal jurisdiction also exists over each Defendant because each, directly or through subsidiaries, makes, uses, sells, offers for sale, imports, ships, distributes, advertises, makes available, and/or markets products within the State of Texas and the Eastern District of Texas that infringe one or more claims of the Patents-in-Suit.  Further, on information and belief, Defendants have placed or contributed to placing infringing products into the stream of commerce, both directly and through intermediaries (including distributors, retailers, authorized dealers, sales agents, and other individuals or entities), knowing or understanding that such products would be sold and used in the United States, including in this District.

12.    Venue is proper in this district pursuant to 28 U.S.C. §§ 1400(b) and 1391(c). Venue is proper in this district under 28 U.S.C. §1400(b) because Defendants have regular and established places of business in this district and have committed acts of infringement in this district. On information and belief, Defendants have regular and established places of business in this district, including their retail stores in this district, such as (1) 701 N Central Expressway, Suite 400, Plano, Texas

75075 and (2) 2401 Preston Road, Suite B, Plano, Texas 75093. Those locations are responsible for using, importing into the United States, selling, and/or offering for sale the Accused Products.

13.    Defendants use, sell, offer for sale, and/or import the Accused Products in this District.

14.    Defendants have also committed acts of infringement in this district by commercializing, marketing, selling, distributing, and servicing the Accused Products.

## PATENTS-IN-SUIT

15.    Plaintiff is the sole and exclusive owner, by assignment, of United States Patent Nos.: (i) 8,712,441 (the '441 Patent); (ii) 9,615,204 (the '204 Patent); and (iii) 9,736,618 (the '618 Patent) (collectively, the Patents-in-Suit).

16.    By operation of law, the Patents-in-Suit were originally issued and exclusively vested to Mr. Richard Haney, as of their respective dates of issuance. *See* 35 U.S.C. § 261; *Schwendimann v. Arkwright Advanced Coating, Inc.,* 959 F.3d 1065, 1072 (Fed. Cir. 2020); *Suppes v. Katti,* 710 Fed. Appx. 883, 887 (Fed. Cir. 2017); *Taylor v. Taylor Made Plastics, Inc.,* 565 Fed. Appx. 888, 889 (Fed. Cir. 2014). Thereafter, by way of written instruments, all rights, title, and interest in the Patents-in-Suit have been assigned to Plaintiff.  As such, Plaintiff has sole and exclusive standing to assert the Patents-in-Suit and to bring these causes of action.

17.    The Patents-in-Suit are valid, enforceable, and were duly issued in full compliance with Title 35 of the United States Code.

18.    The Patents-in-Suit family of patents has been cited over 1,000 times by all of the well-known industry leaders, including multiple citations from industry giants AT&T, Apple, Google, Microsoft, AT&T, T-Mobile, Verizon, Sprint, Virgin Mobile, Facebook, Amazon, Uber, Lyft, Lenovo, Motorola, Huawei, Boeing, Intel, Cisco, Sony, Dell, NEC, Siemens, Palm, Qualcomm, Blackberry, Mitac, Xerox, IBM, HTC, Fujitsu, Hitachi, Nextel, Garmin, Kyocera, Alcatel,

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                                                    4

Mapquest,  Here, Toyota, Ford, GM, Square, Allstate, State Farm, American Express, Capital One, BOA, USAA and Avaya.

19.    The Patents-in-Suit each include numerous claims defining distinct inventions.  No single claim is representative (for purposes of infringement or validity) of any other. Even a cursory review of the claims of the Patents-in-Suit reveals numerous patentably distinct elements which preclude any single claims from being viewed as representative.

20.    The priority date of the Patents-in-Suit is at least as early as April 4, 2005. The Patents-in-Suit generally relate to two way position information sharing technology.

21.    As of the priority dates, the inventions as claimed were novel, non-obvious, unconventional, and non-routine.  Indeed, the Patents-in-Suit overcame a number of specific technological problems in the industry and provided specific technological solutions, and in particular was ***foundational*** to the technology for two way position information sharing. The teachings of the invention, however, do not require development of new cell phone or PDA technology nor do they require development of new cellular communication infrastructure. The functionality implemented by the software of the invention utilizes existing platforms and infrastructure. *See* '441 Patent at 1:28-29, 2:50-54 and Fig. 2A (below).

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                                                    5



**Fig. 1 - Fig. 2A of '441 Patent**

22. The claims of the Patents-in-Suit are patent eligible under 35 U.S.C. § 101, 102, 103, and 112, as reflected by the fact that three different Patent Examiners all agreed and allowed the Patents-in-Suit over extensive prior art as disclosed and of record during the prosecution of the Patents-in-Suit. *See Stone Basket Innov.,* 892 F.3d at 1179 ("when prior art is listed on the face of a patent, the examiner is presumed to have considered it") (citing *Shire LLC v. Amneal Pharm., LLC,* 802 F.3d 1301, 1307 (Fed. Cir. 2015)); *Exmark Mfg. v. Briggs & Stratton,* 879 F.3d 1332, 1342 (Fed. Cir. 2018).

23. After giving full proper credit to the prior art and having conducted a thorough search for all relevant art and having fully considered the most relevant art known at the time, the United States Patent Examiners allowed all of the claims of the Patents-in-Suit to issue. In so doing, it is

presumed that Examiners used their knowledge of the art when examining the claims.  *See K/S Himpp v. Hear-Wear Techs., LLC,* 751 F.3d 1362, 1369 (Fed. Cir. 2014).  It is further presumed that Patent Examiners had experience in the field of the invention, and that the Patent Examiners properly acted in accordance with a person of ordinary skill.  *In re Sang Su Lee,* 277 F.3d 1338, 1345 (Fed. Cir. 2002).

24.    The claims of the Patents-in-Suit are novel and non-obvious, including over all non-cited art that is merely cumulative with the referenced and cited prior art.  *See* 37 C.F.R. § 1.56(b) (information is material to patentability when it is not cumulative to information already of record in the application); *see also AbbVie Deutschland GmbH v. Janssen Biotech,* 759 F.3d 4415, 1304 (Fed. Cir. 2014); *In re DBC,* 545 F.3d 1373, 1382 (Fed. Cir. 2008).  Likewise, the claims of the Patents-in-Suit are novel and non-obvious, including over all non-cited contemporaneous state of the art systems and methods, all of which would have been known to a person of ordinary skill in the art, and which were therefore presumptively also known and considered by the Examiners.  *See, e.g., St. Clair I.P. Consultants v. Canon, Inc.,* 2011 WL 66166 at *6 (Fed. Cir. 2011); *In re Sang Su Lee,* 277 F.3d 1338, 1345 (Fed. Cir. 2002); *In re Koninklijke Philips Patent Litigation,* 2020 WL 7392868 at *19 (N.D. Cal. 2020); *Standard Oil v. American Cyanamid,* 774 F.2d 448, 454 (Fed. Cir. 1985) (persons of ordinary skill are presumed to be aware of all pertinent prior art).

25.    The Patents-in-Suit have been in full compliance with 35 U.S.C. § 287 through either (1) actual notice with affirmative communication of a specific charge of infringement by a specific accused product or device or (2) providing constructive notice—i.e., appropriately marking its products.  *Arctic Cat Inc. v. Bombardier Recreational Prod. Inc.*, 950 F.3d 860, 864 (Fed. Cir. 2020) ("*Arctic Cat II*").  Alternatively, the notice provisions do not apply because the patents are directed to methods and/or the patentee has never made or sold a patented article.  *Id.*

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                                          7

## THE ACCUSED PRODUCTS

26.     Upon information and belief, and as shown below, AT&T makes, sells, advertises, offers for sale, uses, or otherwise provides, at a minimum, hardware, firmware, and software applications, together with the systems and backend components, that enable communication with and among customer devices, which provide location determination, transmissions to AT&T servers, server-side storage and processing, authorization and sharing controls, map display, and alert generation, covered by the Patents-in-Suit. These components include, but are not limited to, networks, servers, cloud-based infrastructure, and associated software, firmware, and applications operating over wireless and traditional communications networks used to implement and support the AT&T Secure Family ecosystem. Exemplary, but not limiting, products, systems and methods equipped with and that use the AT&T Secure Family ecosystem, include the AT&T Secure Family app.



**Fig. 2 - Screenshot of AT&T's Login and informational website for the AT&T Secure Family systems and methods offered, equipped and used with the Accused Products practicing the inventions of the Patents-in-Suit, available at https://apps.apple.com/us/app/at-t-secure-family-parent-app/id353334746**

---

**Welcome to AT&T Secure Family!**
*AT&T Secure Family is a service that helps families stay connected and safe by offering location services and parental controls for your family members' wireless devices. Refer to the AT&T Secure Family Help Guides for more information about this service. Secure Family supports up to 10 family member profiles and up to 30 family devices (smartphones, tablets, or iPads).*

---

**Fig. 3 - Screenshot of AT&T's Login and informational website for the AT&T Secure Family systems and methods offered, equipped and used with the Accused Products practicing the inventions of the Patents-in-Suit, available at https://apps.apple.com/us/app/at-t-secure-family-parent-app/id353334746**

27.     Separately, AT&T makes, sells, advertises, offers for sale, uses, or otherwise provides, at a minimum, hardware, firmware, and software applications, together with the systems and backend components, that enable communication with and among customer devices, which provide location determination, transmissions to AT&T servers, server-side storage and processing, authorization and sharing controls, map display, and alert generation, covered by the Patents-in-Suit. These components include, but are not limited to, networks, servers, cloud-based infrastructure, and associated software, firmware, and applications operating over wireless and traditional communications networks used to implement and support the AT&T FirstNet ecosystem. FirstNet is AT&T's nationwide wireless communications platform designed for public-safety and first-responder use, providing dedicated connectivity, location-aware services, and data communications capabilities across mobile devices, applications, and network infrastructure. The FirstNet ecosystem integrates wireless devices, backend servers, software applications, and cloud-based systems to enable real-time communication, coordination, and location information sharing among users operating on the network. On information and belief, these FirstNet systems and services are implemented using mobile devices, applications, and

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                                                    9

supporting network infrastructure that provide location determination, transmission, processing, storage, and sharing functionality.

28.  Separately, AT&T has infringed (and continues to infringe) one or more claims of the Patents-in-Suit by using, selling, offering for sale, and/or importing into the United States at least, for example, the following products that illustrate AT&T's infringement and the following:

- **Apple Devices:**
  - iPhone 16 / 16e / 16 Pro / 16 Pro Max / 16 Plus
  - iPhone 15 / 15 Pro / 15 Pro Max / 15 Plus
  - iPhone 14 / 14 Pro / 14 Pro Max / 14 Plus
  - iPhone 13 / 13 Pro / 13 Pro Max / 13 mini
  - iPhone 12 / 12 Pro / 12 Pro Max / 12 mini
  - iPhone 11 / 11 Pro / 11 Pro Max
  - iPhone X / XS / XS Max / XR
  - iPhone SE (3rd gen, 2022)
  - iPhone SE (2nd gen, 2020)
  - iPhone 8 / 8 Plus; iPhone 7 / 7 Plus; iPhone 6s / 6s Plus
  - iPad Pro (M5) 11-inch & 13-inch
  - iPad Pro (M4) 11-inch & 13-inch
  - iPad Pro (6th gen, 2022) 11-inch & 12.9-inch
  - iPad Pro (5th gen, 2021) 11-inch & 12.9-inch
  - iPad Pro (4th gen, 2020) 12.9-inch

- **Google Devices:**
  - Pixel 6 / 7 / 8 / 9 families
  - Pixel Fold
  - Pixel A-series
  - Pixel Tablet (Tensor G2, Android 13+)
  - Nexus 7 (2012, 2013)
  - Nexus 9
  - Nexus 10

29.  Collectively, all the foregoing, including all configurations and augmentations thereof, are referred to herein as the "Accused Products."

## COUNT I
## Infringement of U.S. Patent No. 8,712,441

30.  Plaintiff incorporates the above paragraphs by reference.

31.     AT&T without authority, did and continues to make, use, sell, offer to sell, and/or import into the United States the Accused Products as shown above.

32.     AT&T thus has infringed at least claims 1, 3–6, 9–17, 20–24, and 27–33 of the '441 Patent literally and/or under the doctrine of equivalents.

33.     Further on information and belief, AT&T directly uses the infringing Accused Products at least because it assembled the combined infringing elements and makes them collectively available in the United States, including its Internet domain web pages.  Further, and on information and belief, AT&T has directly infringed by using the infringing Accused Products as part of its regular testing and/or internal legal compliance activities.  Such testing and/or legal compliance necessarily requires AT&T to make and use the Accused Products in an infringing manner.  Still further, AT&T is a direct infringer by virtue of its branding and marketing activities, which collectively comprise the sale and offering for sale of the infringing Accused Products.

34.     As shown above in Figs. 2 and 3, AT&T is making, using, and offering for sale the Accused Products.

35.     Additionally, upon information and belief, AT&T owns, directs, and/or controls the infringing systems and method operation of the Accused Products.

36.     AT&T has been on actual notice of the '441 Patent since at least as early as September 2011. At that time, patents within the same patent family as the '441 Patent were repeatedly disclosed to the USPTO during the prosecution of AT&T's own patent applications. The patent family of the '441 Patent indisputably encompasses the '441 Patent itself. *See Enovsys LLC v. T-Mobile USA, Inc.*, No. 2:21-CV-00368-JRG, 2022 WL 3686481, at *2 (E.D. Tex. Aug. 24, 2022). Moreover, the disclosure of these closely related family patents during AT&T's own prosecution proceedings placed AT&T on constructive and actual notice of the '441 Patent specifically, particularly as

AT&T would have conducted routine due diligence to assess prior art and freedom to operate. On information and belief, AT&T's standard due diligence practices for market freedom-to-operate clearance include monitoring and reviewing not only the patents directly cited during prosecution but also their related family members—whether previously filed, later filed, or subsequently issued. Accordingly, AT&T's direct and indirect infringement of the '441 Patent has been undertaken with knowledge of the patent, rendering AT&T liable for direct infringement, indirect infringement, and willful infringement. *See* https://patents.google.com/patent/US8712441#citedBy (reflecting the "Family to Family Citations" for the '441 Patent, which confirms the familial relationships underpinning this notice argument.)

37.    In the alternative, on information and belief, AT&T has a policy or practice against investigating third party patent rights, and its willful blindness qualifies for requisite knowledge of the '441 Patent. *See Estech Sys. IP, LLC v. Carvana, LLC*, No. 2:21-CV-0482-JRG-RSP, 2022 WL 17727752, at *2 (E.D. Tex. Sept. 26, 2022) (noting such an allegation is sufficient "because it provides fair notice of the allegation and the grounds upon which it rests"). Thus, the infringement of the '441 Patent by AT&T is willful.

38.    In addition or in the alternative, AT&T, through its above described notice, indirectly infringed by way of inducing direct infringement by AT&T's customers and/or contributing to the infringement by AT&T's customers of the '441 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, infringing Accused Products for use in systems that fall within the scope of the claims of the '441 Patent. This includes without limitation, one or more of the Accused Products by making, using, importing offering for sale, and/or selling such services,

AT&T injured Plaintiff and is thus liable to Plaintiff for infringement of the '441 Patent under 35 U.S.C. § 271.

39.   AT&T, through its above described notice, induced infringement under Title 35 U.S.C. § 271(b). AT&T performed actions that induced infringement that AT&T knew or should have known would induce actual infringements. *See Manville Sales Corp. v. Paramount Sys., Inc*., 917 F.2d 544, 553 (Fed.Cir.1990), quoted in *DSU Med. Corp. v. JMS Co*., 471 F.3d 1293, 1306 (Fed.Cir.2006) (*en banc* in relevant part). "[A] finding of inducement requires a threshold finding of direct infringement—either a finding of specific instances of direct infringement or a finding that the accused products necessarily infringe." *Ricoh,* 550 F.3d at 1341 (citing *ACCO Brands, Inc. v. ABA Locks Manufacturer Co*., 501 F.3d 1307, 1313, (Fed. Cir. 2007).

40.   Plaintiff will rely on direct and/or circumstantial evidence to prove the intent element. *See Fuji Photo Film Co. v. Jazz Photo Corp.*, 394 F.3d 1368, 1377 (Fed. Cir. 2005) ("A patentee may prove intent through circumstantial evidence."); *Water Techs. Corp. v. Calco, Ltd*., 850 F.2d 660, 668 (Fed. Cir. 1988) ("While proof of intent is necessary, direct evidence is not required; rather, circumstantial evidence may suffice.").

41.   AT&T has taken active steps to induce infringement, such as advertising an infringing use, which supports a finding of an intention for the Accused Products to be used in an infringing manner. *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd*., 545 U.S. 913, 932, 125 S. Ct. 2764, 162 L. Ed. 2d 781 (2005) (explaining that the contributory infringement doctrine "was devised to identify instances in which it may be presumed from distribution of an article in commerce that the distributor intended the article to be used to infringe another's patent, and so may justly be held liable for that infringement").

42.     As one non-limiting example, and as shown in Figs. 2 and 3 above, AT&T, with knowledge that the Accused Products infringe, knowingly and intentionally induced direct infringement of the '441 Patent by providing instructions to its customers and end users how to use the Accused Products, including specifically how to "share your location with others." The customer and end user is provided with the functionality to share that user's location with others.

43.     AT&T has induced infringement by the customers and end users with the intent to cause infringement by them, in the alternative, with the belief that there is a high probability that they infringe the '441 Patent, but while willfully infringing and/or remaining willfully blind to the infringement.

44.     The foregoing infringement on the part of AT&T has caused injury to Plaintiff.  The specific dollar amount of damages adequate to compensate for the infringement shall be determined at trial but is in no event less than a reasonable royalty from the date of first infringement to the expiration of the '441 Patent.

45.     Each of AT&T's aforesaid activities have been without authority and/or license from Plaintiff.

46.     Plaintiff has been damaged as a result of the infringing conduct by AT&T alleged above. Thus, AT&T is liable to Plaintiff in an amount that adequately compensates it for such infringement, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

47.     Plaintiff and/or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law.

## COUNT II
## Infringement of U.S. Patent No. 9,615,204

48.     Plaintiff incorporates the above paragraphs by reference.

49.    AT&T without authority, did and continues to make, use, sell, offer to sell, and/or import into the United States the Accused Products as shown above.

50.    AT&T thus has infringed at least claims 1, 2-4, 7-10, 12-14, 16-18, 21-23 and 25 of the '204 Patent literally and/or under the doctrine of equivalents.

51.    Further on information and belief, AT&T directly uses the infringing Accused Products at least because it assembled the combined infringing elements and makes them collectively available in the United States, including its Internet domain web pages.  Further, and on information and belief, AT&T has directly infringed by using the infringing Accused Products as part of its regular testing and/or internal legal compliance activities.  Such testing and/or legal compliance necessarily requires AT&T to make and use the Accused Products in an infringing manner.  Still further, AT&T is a direct infringer by virtue of its branding and marketing activities, which collectively comprise the sale and offering for sale of the infringing Accused Products.

52.    As shown above in Figs. 2 and 3, AT&T is making, using, and offering for sale the Accused Products.

53.    Additionally, upon information and belief, AT&T owns, directs, and/or controls the infringing systems and method operation of the Accused Products.

54.    AT&T has been on actual notice of the '204 Patent since at least as early as September 2011. At that time, patents within the same patent family as the '204 Patent were repeatedly disclosed to the USPTO during the prosecution of AT&T's own patent applications. The patent family of the '204 Patent indisputably encompasses the '204 Patent itself. *See Enovsys LLC v. T-Mobile USA, Inc.*, No. 2:21-CV-00368-JRG, 2022 WL 3686481, at *2 (E.D. Tex. Aug. 24, 2022). Moreover, the disclosure of these closely related family patents during AT&T's own prosecution proceedings placed AT&T on constructive and actual notice of the '204 Patent specifically, particularly as

AT&T would have conducted routine due diligence to assess prior art and freedom to operate. On information and belief, AT&T's standard due diligence practices for market freedom-to-operate clearance include monitoring and reviewing not only the patents directly cited during prosecution but also their related family members—whether previously filed, later filed, or subsequently issued. Accordingly, AT&T's direct and indirect infringement of the '204 Patent has been undertaken with knowledge of the patent, rendering AT&T liable for direct infringement, indirect infringement, and willful infringement. *See* https://patents.google.com/patent/US9615204B1/en?oq=9%2c615%2c204#citedBy (reflecting the "Family to Family Citations" for the '204 Patent, which confirms the familial relationships underpinning this notice argument.)

55.    In the alternative, on information and belief, AT&T has a policy or practice against investigating third party patent rights, and its willful blindness qualifies for requisite knowledge of the '204 Patent. *See Estech Sys. IP, LLC v. Carvana, LLC*, No. 2:21-CV-0482-JRG-RSP, 2022 WL 17727752, at *2 (E.D. Tex. Sept. 26, 2022) (noting such an allegation is sufficient "because it provides fair notice of the allegation and the grounds upon which it rests"). Thus, the infringement of the '204 Patent by AT&T is willful.

56.    In addition or in the alternative, AT&T, through its above described notice, indirectly infringed by way of inducing direct infringement by AT&T's customers and/or contributing to the infringement by AT&T's customers of the '204 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, infringing Accused Products for use in systems that fall within the scope of the claims of the '204 Patent. This includes without limitation, one or more of the Accused Products by making, using, importing offering for sale, and/or selling such services,

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                                    16

AT&T injured Plaintiff and is thus liable to Plaintiff for infringement of the '204 Patent under 35 U.S.C. § 271.

57.    AT&T, through its above described notice, induced infringement under Title 35 U.S.C. § 271(b). AT&T performed actions that induced infringement that AT&T knew or should have known would induce actual infringements. *See Manville Sales Corp. v. Paramount Sys., Inc*., 917 F.2d 544, 553 (Fed.Cir.1990), quoted in *DSU Med. Corp. v. JMS Co*., 471 F.3d 1293, 1306 (Fed.Cir.2006) (*en banc* in relevant part). "[A] finding of inducement requires a threshold finding of direct infringement—either a finding of specific instances of direct infringement or a finding that the accused products necessarily infringe." *Ricoh,* 550 F.3d at 1341 (citing *ACCO Brands, Inc. v. ABA Locks Manufacturer Co*., 501 F.3d 1307, 1313, (Fed. Cir. 2007).

58.    Plaintiff will rely on direct and/or circumstantial evidence to prove the intent element. *See Fuji Photo Film Co. v. Jazz Photo Corp.*, 394 F.3d 1368, 1377 (Fed. Cir. 2005) ("A patentee may prove intent through circumstantial evidence."); *Water Techs. Corp. v. Calco, Ltd*., 850 F.2d 660, 668 (Fed. Cir. 1988) ("While proof of intent is necessary, direct evidence is not required; rather, circumstantial evidence may suffice.").

59.    AT&T has taken active steps to induce infringement, such as advertising an infringing use, which supports a finding of an intention for the Accused Products to be used in an infringing manner. *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd*., 545 U.S. 913, 932, 125 S. Ct. 2764, 162 L. Ed. 2d 781 (2005) (explaining that the contributory infringement doctrine "was devised to identify instances in which it may be presumed from distribution of an article in commerce that the distributor intended the article to be used to infringe another's patent, and so may justly be held liable for that infringement").

60.     As one non-limiting example, and as shown in Figs. 2 and 3 above, AT&T, with knowledge that the Accused Products infringe, knowingly and intentionally induced direct infringement of the '204 Patent by providing instructions to its customers and end users how to use the Accused Products, including specifically how to "share your location with others." The customer and end user is provided with the functionality to share that user's location with others.

61.     AT&T has induced infringement by the customers and end users with the intent to cause infringement by them, in the alternative, with the belief that there is a high probability that they infringe the '204 Patent, but while willfully infringing and/or remaining willfully blind to the infringement.

62.     The foregoing infringement on the part of AT&T has caused injury to Plaintiff.  The specific dollar amount of damages adequate to compensate for the infringement shall be determined at trial but is in no event less than a reasonable royalty from the date of first infringement to the expiration of the '204 Patent.

63.     Each of AT&T's aforesaid activities have been without authority and/or license from Plaintiff.

64.     Plaintiff has been damaged as a result of the infringing conduct by AT&T alleged above. Thus, AT&T is liable to Plaintiff in an amount that adequately compensates it for such infringement, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

65.     Plaintiff and/or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law.

**COUNT III**
**Infringement of U.S. Patent No. 9,736,618**

66.     Plaintiff incorporates the above paragraphs by reference.

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                                    18

67.     AT&T without authority, did and continues to make, use, sell, offer to sell, and/or import into the United States the Accused Products as shown above.

68.     AT&T thus has infringed at least claims 1-8, 10, 12-16, 18-26, 28-29, and 31-36 of the '618 Patent literally and/or under the doctrine of equivalents.

69.     Further on information and belief, AT&T directly uses the infringing Accused Products at least because it assembled the combined infringing elements and makes them collectively available in the United States, including its Internet domain web pages.  Further, and on information and belief, AT&T has directly infringed by using the infringing Accused Products as part of its regular testing and/or internal legal compliance activities.  Such testing and/or legal compliance necessarily requires AT&T to make and use the Accused Products in an infringing manner.  Still further, AT&T is a direct infringer by virtue of its branding and marketing activities, which collectively comprise the sale and offering for sale of the infringing Accused Products.

70.     As shown above in Figs. 2 and 3, AT&T is making, using, and offering for sale the Accused Products.

71.     Additionally, upon information and belief, AT&T owns, directs, and/or controls the infringing systems and method operation of the Accused Products.

72.     AT&T has been on actual notice of the '618 Patent since at least as early as September 2011. At that time, patents within the same patent family as the '618 Patent were repeatedly disclosed to the USPTO during the prosecution of AT&T's own patent applications. The patent family of the '618 Patent indisputably encompasses the '618 Patent itself. *See Enovsys LLC v. T-Mobile USA, Inc.*, No. 2:21-CV-00368-JRG, 2022 WL 3686481, at *2 (E.D. Tex. Aug. 24, 2022). Moreover, the disclosure of these closely related family patents during AT&T's own prosecution proceedings placed AT&T on constructive and actual notice of the '618 Patent specifically, particularly as

AT&T would have conducted routine due diligence to assess prior art and freedom to operate. On information and belief, AT&T's standard due diligence practices for market freedom-to-operate clearance include monitoring and reviewing not only the patents directly cited during prosecution but also their related family members—whether previously filed, later filed, or subsequently issued. Accordingly, AT&T's direct and indirect infringement of the '618 Patent has been undertaken with knowledge of the patent, rendering AT&T liable for direct infringement, indirect infringement, and willful infringement. *See* https://patents.google.com/patent/US9736618B1/en?oq=9%2c736%2c618#citedBy (reflecting the "Family to Family Citations" for the '618 Patent, which confirms the familial relationships underpinning this notice argument.)

73.     In the alternative, on information and belief, AT&T has a policy or practice against investigating third party patent rights, and its willful blindness qualifies for requisite knowledge of the '618 Patent. *See Estech Sys. IP, LLC v. Carvana, LLC*, No. 2:21-CV-0482-JRG-RSP, 2022 WL 17727752, at *2 (E.D. Tex. Sept. 26, 2022) (noting such an allegation is sufficient "because it provides fair notice of the allegation and the grounds upon which it rests"). Thus, the infringement of the '618 Patent by AT&T is willful.

74.     In addition or in the alternative, AT&T, through its above described notice, indirectly infringed by way of inducing direct infringement by AT&T's customers and/or contributing to the infringement by AT&T's customers of the '618 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, infringing Accused Products for use in systems that fall within the scope of the claims of the '618 Patent. This includes without limitation, one or more of the Accused Products by making, using, importing offering for sale, and/or selling such services,

AT&T injured Plaintiff and is thus liable to Plaintiff for infringement of the '618 Patent under 35 U.S.C. § 271.

75.    AT&T, through its above described notice, induced infringement under Title 35 U.S.C. § 271(b). AT&T performed actions that induced infringement that AT&T knew or should have known would induce actual infringements. *See Manville Sales Corp. v. Paramount Sys., Inc*., 917 F.2d 544, 553 (Fed.Cir.1990), quoted in *DSU Med. Corp. v. JMS Co*., 471 F.3d 1293, 1306 (Fed.Cir.2006) (*en banc* in relevant part). "[A] finding of inducement requires a threshold finding of direct infringement—either a finding of specific instances of direct infringement or a finding that the accused products necessarily infringe." *Ricoh,* 550 F.3d at 1341 (citing *ACCO Brands, Inc. v. ABA Locks Manufacturer Co*., 501 F.3d 1307, 1313, (Fed. Cir. 2007).

76.    Plaintiff will rely on direct and/or circumstantial evidence to prove the intent element. *See Fuji Photo Film Co. v. Jazz Photo Corp.*, 394 F.3d 1368, 1377 (Fed. Cir. 2005) ("A patentee may prove intent through circumstantial evidence."); *Water Techs. Corp. v. Calco, Ltd*., 850 F.2d 660, 668 (Fed. Cir. 1988) ("While proof of intent is necessary, direct evidence is not required; rather, circumstantial evidence may suffice.").

77.    AT&T has taken active steps to induce infringement, such as advertising an infringing use, which supports a finding of an intention for the Accused Products to be used in an infringing manner. *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd*., 545 U.S. 913, 932, 125 S. Ct. 2764, 162 L. Ed. 2d 781 (2005) (explaining that the contributory infringement doctrine "was devised to identify instances in which it may be presumed from distribution of an article in commerce that the distributor intended the article to be used to infringe another's patent, and so may justly be held liable for that infringement").

78.     As one non-limiting example, and as shown in Figs. 2 and 3 above, AT&T, with knowledge that the Accused Products infringe, knowingly and intentionally induced direct infringement of the '618 Patent by providing instructions to its customers and end users how to use the Accused Products, including specifically how to "share your location with others." The customer and end user is provided with the functionality to share that user's location with others.

79.     AT&T has induced infringement by the customers and end users with the intent to cause infringement by them, in the alternative, with the belief that there is a high probability that they infringe the '618 Patent, but while willfully infringing and/or remaining willfully blind to the infringement.

80.     The foregoing infringement on the part of AT&T has caused injury to Plaintiff.  The specific dollar amount of damages adequate to compensate for the infringement shall be determined at trial but is in no event less than a reasonable royalty from the date of first infringement to the expiration of the '618 Patent.

81.     Each of AT&T's aforesaid activities have been without authority and/or license from Plaintiff.

82.     Plaintiff has been damaged as a result of the infringing conduct by AT&T alleged above. Thus, AT&T is liable to Plaintiff in an amount that adequately compensates it for such infringement, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

83.     Plaintiff and/or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests the Court enter judgment against AT&T as follows:

1.      Declaring that AT&T has infringed the Patents-in-Suit;

2.    Awarding Plaintiff its damages suffered because of AT&T's infringement of the Patents-in-Suit;

3.    Enter a judgment awarding treble damages pursuant to 35 U.S.C. §284 for AT&T's willful infringement of the Patents-in-Suit;

4.    Awarding Plaintiff its costs, reasonable attorneys' fees, expenses, and interest;

5.    Granting Plaintiff such further relief as the Court finds appropriate.

## **JURY DEMAND**

Plaintiff demands trial by jury, under Fed. R. Civ. P. 38.

Respectfully Submitted

*/s/* Christopher A. Honea
M. Scott Fuller
    Texas Bar No. 24036607
    sfuller@ghiplaw.com
Randall Garteiser
    Texas Bar No. 24038912
    rgarteiser@ghiplaw.com
Christopher A. Honea
    Texas Bar No. 24059967
    chonea@ghiplaw.com

**GARTEISER HONEA, PLLC**
119 W. Ferguson Street
Tyler, Texas 75702
Telephone: (903) 705-7420
Facsimile: (903) 405-3999

**ATTORNEYS FOR PLAINTIFF**